IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ELVIN J. FELICIANO-HERNÁNDEZ,

Plaintiff,

v.

WALMART PUERTO RICO, INC. D/B/A SAM'S CLUB OF MAYAGÜEZ, *et al.*

Defendants.

CIVIL NO. 22-1389 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

Plaintiff Elvin J. Feliciano-Hernández ("Plaintiff") brings forth this negligence claim against Defendant Walmart Puerto Rico, Inc. D/B/A Sam's Club of Mayagüez ("Defendant") based on diversity jurisdiction. (Docket No. 1). Before the court now is Defendant's Motion to Dismiss the Complaint for Lack of Subject Matter Jurisdiction, where it alleges that the Court lacks subject matter jurisdiction to hear this case under Federal Rule of Civil Procedure 12(b)(1). (Docket No. 64).

For the reasons stated below, the Court finds that diversity jurisdiction is present. Accordingly, Defendant's Motion to Dismiss is DENIED.

**FACTUAL AND PROCEDURAL BACKGROUND**

On August 16, 2021, Plaintiff was purchasing groceries at the Sam's Club store located in Mayagüez, Puerto Rico. (Docket No. 1, at p. 2). After completing the purchase and when heading to his vehicle, Plaintiff was struck by a "Cart Mule" operated by a Sam's Club employee. Id. at p. 3. The employee was using the "Cart Mule" to transport shopping carts and, after colliding with the Plaintiff, "immediately admitted his wrongdoing." Id.

Plaintiff was then taken to and received medical attention at the Emergency Room of Aguada Medical Center. Id. Plaintiff's "injuries included traumas to his left leg, left ankle, left knee, right arm, right ankle, right-side ribs, and lower back." Id. Two days after the accident, Plaintiff reported the incident at the police station in Mayagüez, Puerto Rico, and subsequently returned to Sam's Club, where he was informed that an incident report had been filed. Id. As a result of the accident, Plaintiff's left leg remains severely swollen, and he continues to experience serious problems walking. Id. Thus, Plaintiff has not been able to work. Id. at 4.

On August 14, 2022, Plaintiff filed the present suit alleging that Defendant "is liable for his employee's negligent acts and/or omissions insofar as he was negligently and recklessly driving the 'Cart Mule' that transported the store's shopping carts that impacted the plaintiff." Id. Plaintiff argues that Defendant is vicariously liable for the actions of its employee. Id. Furthermore, Plaintiff avers that Defendant breached its duty of care by "failing to take into consideration the client's safety" and "failing to use reasonable care while driving the 'Cart Mule' that transported the store's shopping carts." Id.

Defendant answered the Complaint on September 20, 2022, raising several affirmative defenses, including that the Court "does not have subject matter jurisdiction over this claim pursuant to Fed. R. Civ. P. 12(b)(1)." (Docket No. 8, at p. 7). On February 29, 2024, Defendant filed the present Motion to Dismiss alleging lack of subject matter jurisdiction. (Docket No. 64). Defendant contends that Plaintiff "cannot plausibly establish domicile in Minnesota and, thus there is no complete diversity between the Parties." Id. at 7. Plaintiff opposed dismissal on March 26, 2024, arguing that, at the

time of filing the Complaint, Plaintiff "was and continues to be a resident of Minnesota." (Docket. 72, at p. 18).

**LEGAL STANDARD**

All "federal courts are courts of limited jurisdiction." Ribas v. Ponce Yacht & Fishing Club, Inc., 315 F.Supp.2d 156, 159 (D.P.R. 2004). Therefore, the party seeking "jurisdiction of the federal courts, has the burden of demonstrating its existence." Id. (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). Courts must "construe the complaint liberally and treat all well-pleaded facts as true, according to the plaintiff the benefit of all reasonable inferences." Murphy, 45 F.3d at 522. However, a plaintiff may not rest his arguments on "unsupported conclusions or interpretations of law." Id. (quoting Washington Legal Found. v. Massachusetts Bar Found., 993 F.2d 962, 971 (1st Cir. 1993)). Along the same lines, "subjective characterizations or conclusory descriptions of a general scenario which *could* be dominated by unpleaded facts will not defeat a motion to dismiss." Id. (citing Coyne v. City of Somerville, 972 F.2d 440, 444 (1st Cir. 1992)).

Under Fed. R. of Civ. P. 12(b)(1), "when a defendant challenges the existence *vel non* of diversity jurisdiction, the challenge can be launched in either of two formats." Valentín v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). A defendant may proceed "by challenging the allegations in the complaint as insufficient on their face or by challenging the accuracy of those allegations." Hernández-Santiago v. Ecolab, Inc., 397 F.3d 30, 33 (1st Cir. 2005). In the present case, Defendant engages in the former. Therefore, the appropriate analysis encompasses an assessment of "whether the plaintiff has propounded an adequate basis for subject-matter jurisdiction." Valentín, 254 F.3d at

Case 3:22-cv-01389-CVR     Document 79     Filed 06/17/24     Page 4 of 10

Elvin J. Feliciano-Hernández v. Walmart Puerto Rico, et al.
Opinion and Order
Civil No. 22-1389 (CVR)
Page 4
_____

363 (citing Ohio Nat'l Life Ins. Co. v. U.S., 922 F.2d 320, 325 (6th Cir. 1990); Menchaca v. Chrysler Credit Corp., 613 F.2d 507, 511 (5th Cir. 1980)).

## LEGAL ANALYSIS

**A. Applicable Law.**

28 U.S.C.S. § 1332(a)(1) specifies "that district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive interests and costs, and is between— (1) Citizens of different States . . . .." 28 U.S.C.S. § 1332(a)(1). Furthermore, "diversity must be complete; that is, no plaintiff may be a citizen of the same state as any defendant." BRT Mgmt. LLC v. Malden Storage LLC, 68 F.4th 691, 695 (1st Cir. 2023). One is a "citizen" of the state where they are "domiciled." Padilla-Mangual v. Pavía Hosp., 516 F.3d 29, 30 (1st Cir. 2008) (citing Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991)).

For purposes of determining diversity jurisdiction, a person can only be domiciled in one place, irrespective of having more than one residence. Lundquist, 946 F.2d at 10. A person's domicile "is the place where he has a true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 49 (1st Cir. 1992) (quoting Rodríguez-Díaz v. Sierra-Martínez, 853 F.2d 1027, 1029 (1st Cir. 1988)).

To prove domicile "(1) 'physical presence in a place' and (2) 'the intent to make that place one's home'" must be shown. Aponte-Dávila v. Mun. of Caguas, 828 F.3d 40, 46 (1st Cir. 2016) (quoting Valentín, 254 F.3d at 366). When discerning intent, the First Circuit has consistently looked to "the place where civil and political rights are exercised, taxes paid, real and personal property (such as furniture and automobiles) located,

Case 3:22-cv-01389-CVR   Document 79   Filed 06/17/24   Page 5 of 10

Elvin J. Feliciano-Hernández v. Walmart Puerto Rico, et al.
Opinion and Order
Civil No. 22-1389 (CVR)
Page 5
_____

driver's and other licenses obtained, bank accounts maintained, location of club and church membership and places of business or employment." Padilla-Mangual, 516 F.3d at 32 (citing Bank One, 964 F.2d at 50). However, "no single factor is dispositive, and the analysis focuses not simply on the number of contacts with the purported domicile, but also on their substantive nature." García Pérez v. Santaella, 364 F.3d 348, 351 (1st Cir. 2004) (citing Lundquist, 946 F.2d at 12); but see Padilla-Mangual, 516 F.3d at 32 (noting that the place a person is registered to vote is a "weighty factor in determining domicile.") (citing Lundquist, 946 F.2d at 12).

Furthermore, "the key point of inquiry is whether diversity of citizenship existed at the time the suit was filed …" García Pérez, 364 F.3d at 351 (citing Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 700 (1st Cir. 1979); Miranda v. Miranda, 686 F.Supp.44, 47 (D.P.R. 1988)). Once complete diversity of citizenship is found, it is not forfeited by a later change in domicile. Bank One, 964 at 49 (citing Lundquist, 946 F.2d at 10). To change domiciles, "a person must move to a new state in which she intends to remain indefinitely." Hawes, 598 F.2d at 701. Additionally, "there is no minimum period of residency required" and "it has long been the rule that motive for change in residence is irrelevant in determining domicile." Id. Nevertheless, one's domicile is "presumed to continue until it is shown to have been changed." Palermo v. Abrams, 62 F.Supp.2d 408, 410 (D.P.R. 1999) (citing Bank One, 964 F.2d at 50).

Lastly, "the party invoking diversity jurisdiction must prove domicile by a preponderance of the evidence." García Pérez, 364 F.3d 348, 351 (1st Cir. 2004) (citing Bank One, 964 F.2d at 50); see Collazo-Rosado v. Univ. of P.R., 775 F.Supp.2d 376, 379 (D.P.R. 2011) (citing Skwira v. U.S., 344 F.3d 64, 71 (1st Cir. 2003) and noting that when

"subject matter jurisdiction is challenged under 12(b)(1), the party asserting jurisdiction bears the burden of demonstrating the existence of federal subject matter jurisdiction.").

### B. Discussion.

As stated above, Defendant argues that the Court lacks subject matter jurisdiction to hear this case. (Docket No. 64). Defendant alleges that Plaintiff has not established a new domicile in Minnesota and effectively retained his domicile in Puerto Rico, barring the Court's subject matter jurisdiction. Id. Conversely, Plaintiff avers that "Defendant's contentions focus on events that occurred years prior and after the incident['s] occurrence." (Docket No. 72, at p. 2). Plaintiff maintains that, at the time of filing the Complaint, he was domiciled in Minnesota. Id. Upon examining the parties' submissions, the Court agrees with Plaintiff.

The critical date is August 14, 2022, the date in which the Complaint was filed. (Docket No. 1, at p. 6). It is uncontested from the filings on record that, at the above-mentioned date, Plaintiff had the following ties to Minnesota: (1) having debit cards with the First National Bank of Minnesota; (2) paying federal taxes; (3) employment with Allegiant Staffing, Inc.; (4) receiving aid from the government of Minnesota, including health insurance and food stamps; and (5) seeking medical treatment there. (Docket Nos. 64 and 72, Exhibits B, E, F, G, H, and I).

As previously mentioned, the First Circuit in cases including, but not limited to, Padilla-Mangual and Bank One, has consistently turned to the same factors when determining domicile. In applying these factors to the facts at hand, it is noted that Plaintiff maintains debit cards in Minnesota, pays federal taxes, and was employed by Allegiant Staffing. (Docket Nos. 64 and 72, Exhibits E, H, and I). Plaintiff holds two debit

cards with First National Bank of Minnesota, one valid until December 2022 and the other through December 2026, both effective well beyond the date in which the Complaint was filed. (Docket. 72, Exhibit E). As it appears on the record, Plaintiff has been paying federal taxes since 2017. (Docket No. 64, Exhibit I). Notably, on Plaintiff's 2020-2021 Form 1040 the "home address" field contains Plaintiff's Minnesota address, "630 Harvey Dr., Apt. 313, Gaylord, MN, 55334." (Docket No. 64, Exhibit I). Possession of debit cards and payment of federal taxes are strong indicators that Plaintiff's domicile is in Minnesota.

Moreover, Plaintiff was employed by Allegiant Staffing, "a company that is in Puerto Rico and the United States that is in the business of recruiting employees for different companies in the United States." (Docket No. 64, Exhibit G). Here, he served as a machine operator and drove the company truck. (Docket 72, Exhibit B). Although Plaintiff was paid by Allegiant Staffing, the machinery and the trucks he operated belonged to Seneca Food, which has multiple locations across the United States, and Stoughton Trailer, located in Wisconsin. (Docket No. 64, Exhibit G). Through his employment with Allegiant Staffing, Plaintiff has also worked and had driver's licenses in Arkansas, Pennsylvania, and Wisconsin. (Docket No. 72, Exhibits B and D). Plaintiff's employment demonstrates that he is domiciled in the United States, not Puerto Rico.

Due to the injuries sustained during the accident, Plaintiff had to cease working. In doing so, he lost the health insurance he had obtained via his employment with Allegiant Staffing. (Docket. No. 72, Exhibit B). However, less than three (3) months after the accident, the government of Minnesota granted Plaintiff Medicaid health insurance and placed him on their food stamps program. (Docket Nos. 64 and 72, Exhibits B, F, and

K). Further cementing his ties to the state, Plaintiff sought medical attention in Minnesota, beginning on July 11, 2022, and spanning until August 30, 2022, as reflected on the record. (Docket No. 72, Exhibit G). For instance, on August 1, 2022, Plaintiff underwent a bone scan at Glencoe Regional Health Services. (Docket. No. 72, Exhibit G). This further attests to the fact that, despite not being actively employed in the United States, Plaintiff retained significant ties to Minnesota. As of February 17, 2023, Plaintiff has resumed working with Allegiant Staffing. (Docket No. 64, Exhibit H).

Since Plaintiff has never voted, does not practice any religion, is not involved in any social or community organization, and did not possess a Minnesota driver's license when the Complaint was filed, these factors are not allocated any weight in determining Plaintiff's true domicile. (Docket No. 72, Exhibit B). Furthermore, Plaintiff does not own real property, but has been renting in Minnesota for over twelve (12) years. (Docket No. 72, Exhibit B). All this evidence, taken together, persuades the Court that Plaintiff has set forth an adequate basis for subject matter jurisdiction.

Succinctly, the above-mentioned ties to Minnesota, convince the Court that Plaintiff had indeed established a new domicile in Minnesota, when the Complaint in this case was filed, and relinquished his prior domicile.

On a final note, the Court recognizes that Plaintiff maintains some ties to Puerto Rico, namely: (1) frequent usage of Puerto Rico addresses when filing forms; and (2) receiving medical attention and completing physical therapy while in Puerto Rico. (Docket Nos. 64 and 72, Exhibits A, D, and C). However, these ties do not change the Court's conclusion.

Case 3:22-cv-01389-CVR   Document 79   Filed 06/17/24   Page 9 of 10

Elvin J. Feliciano-Hernández v. Walmart Puerto Rico, et al.
Opinion and Order
Civil No. 22-1389 (CVR)
Page 9
_____

Plaintiff's line of work requires him to travel in accordance with the company's needs and for this reason Plaintiff uses his "mother's mailing address to receive and keep up with my correspondence." (Docket No. 64, Exhibit A). This explains why Plaintiff's 2017-2021 Form W-2 Wage and Tax Statement contain a Puerto Rico address under the field "employee's address." (Docket No. 64, Exhibit I). Similarly, on the Police Incident Report, Customer Incident Report, Aguada Medical Center form, and Wage Statement Reports with Allegiant Staffing from 2017 through 2023, Plaintiff uses a Puerto Rico address. (Docket No. 64, Exhibits A, B, C, and H). As noted by the First Circuit, representations of one's residence, "do not themselves result in a change in domicile." Aponte-Dávila v. Municipality of Caguas, 828 F.3d 40, 48 (1st Cir. 2016). For this reason, Plaintiff's representations about his residence when filing forms, most of which occurred prior to filing the Complaint, are allocated less weight than his ties to Minnesota when determining Plaintiff's domicile.

At the time of the accident, Plaintiff was in Puerto Rico on "vacation to see [his] son and [his] family." (Docket. No. 72, Exhibit B). When the accident occurred, Plaintiff's injuries were subsequently treated at the Aguada Medical Center. (Docket No. 64, Exhibit C). Plaintiff also stated that during his stay in Puerto Rico, he sought treatment with an orthopedist named Lazarrini. (Docket No. 72, Exhibit B)). Given that the accident occurred in Puerto Rico, it is logical for Plaintiff to have been treated in Puerto Rico. Plaintiff also completed ten (10) physical therapy sessions in Puerto Rico, culminating on February 4, 2022. (Docket No. 64, Exhibit D).

On the other hand, Plaintiff has not paid income taxes in Puerto Rico since 2015. (Docket No. 72, Exhibit). Furthermore, he does not possess a Puerto Rico driver's license,

own any property, or have any financial ties to Puerto Rico. (Docket No. 72, Exhibit B). Plaintiff notes that "in the United States I have better job opportunities, better pay. I don't see myself living here in Puerto Rico. My life is there, in the states." (Docket No. 72, Exhibit B). Frequent usage of Puerto Rico's addresses and receiving medical treatment there, does not necessarily illustrate that Plaintiff is domiciled in Puerto Rico, nor does it outweigh Plaintiff's ties to Minnesota.

In sum, Plaintiff has demonstrated by a preponderance of the evidence, that he was indeed domiciled in Minnesota at the time the Complaint was filed in the instant case, therefore proving that diversity jurisdiction exists.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss pursuant to Fed. R. of Civ. P. 12(b)(1) is DENIED. (Docket. No. 64).

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 17th day of June 2024.

                                      S/CAMILLE L. VELEZ-RIVE
                                      CAMILLE L. VELEZ-RIVE
                                      UNITED STATES DISTRICT JUDGE